IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANTOINE SANGSTER, <br> K60255, <br><br>     Plaintiff, <br><br> vs. <br><br> NURSE NICOLE, <br> SGT. WOOLEY, <br> MAJ. HAZAMIER, <br> C. AASERU, <br> LT. BENNET, <br> N. BEBOUT, <br> BENNET, <br> GARCIA, <br> CHANDLER, <br> A. KENNER, <br> TRAVIS BAYLER, <br> HARAIS ALLISON, <br> RAMSEY SHEILAM, <br><br>     Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )   Case No. 23-cv-2581-MAB <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM & ORDER**

**BEATTY, Magistrate Judge:**

    Plaintiff Antoine Sangster, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Menard Correctional Center (Menard), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. The Court dismissed Plaintiff's original pleading for failure to state a claim, and Plaintiff timely filed an Amended Complaint (Doc. 10).

The Amended Complaint (Doc. 10) is now before the Court[1] for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE AMENDED COMPLAINT

On a date he does not remember, Plaintiff spoke with Defendants Wooley and Hazamier and told them that he could not be placed in the West cellhouse due to gang associations and an unsafe environment. (Doc. 10 at 6). Plaintiff alleges that Wooley and Hazamier must not have relayed these issues to their colleagues, because, despite this information he was placed in the West cellhouse. (*Id.*). On April 11, 2023, while in the West cellhouse he was assaulted by another inmate, and he was stabbed three times. (Doc. 10 at 7-8). As a result of the altercation, he was sprayed with OC spray, and he was escorted to the healthcare unit by Defendant Nicholas F. Bebout. (Doc. 10 at 7). Defendant Aaseru ordered that he be placed in restrictive housing.

---

[1] The Court has jurisdiction to resolve Plaintiff's motions and to screen his Complaint in light of his consent to the full jurisdiction of a magistrate judge and the Illinois Department of Corrections' and Wexford's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandums of Understanding between the Illinois Department of Corrections and Wexford and this Court.

At the healthcare unit, Nurse Nicole and an internal affairs officer documented his wounds with photographs. (Doc. 10 at 7). Despite seeing his wounds, Nurse Nicole only gave him a band aid and told an officer he was good to go. Plaintiff felt dizzy after the attack and he was concerned he had a concussion, but when he informed staff who passed by his cell of his concerns, no one did anything. (Doc. 10 at 8).

Plaintiff was taken to the North 2 restrictive housing unit where he was placed in a cell without soap, towels, sheets, blankets, pillows, or any other essential items. (Doc. 10 at 7). He was left in this state for 28 days. Throughout the day on April 11, 2023, Plaintiff informed Lieutenant Bennet, C/O Bennet, Officer Chandler, and Officer Garcia about his lack of any essential supplies, but they did not provide any assistance. (Doc. 10 at 8-9). He also informed them that he needed medical treatment to no avail. Near the end of the pleading, Plaintiff also alleges that Defendants T. Bayler, H. Allison, and R. Sheilam were made aware of the conditions of his confinement and his need for medical care via the grievance procedure and grievance appeals, but they failed to do anything to assist him.

Separate from the allegations about the assault and his subsequent conditions of confinement in restrictive housing, Plaintiff also alleges that prior to the assault on March 30, 2023, he was transferred from Pontiac to Menard despite the fact that he had ongoing medical care at Pontiac. (Doc. 10 at 9). Specifically, he claimed that just a week prior to this transfer he had undergone diagnostic testing that produced a diagnosis of kidney disease. He alleges the kidney disease caused him abdominal pain and pain with urination, but his requests for care for these issues went unanswered. Eventually, on

August 23, 2023, he was sent on a medical furlough that revealed kidney stones and blood in his urine. He alleges he sustained these injuries because there was no system in place to address his medical needs.

Plaintiff also alleges that he had a longstanding medical permit for front cuffs because of a right forearm injury, but the permit has not been honored or issued at Menard. (Doc. 10 at 10). This has caused him pain.

In addition to the Amended Complaint itself (Doc. 10), Plaintiff also submitted a Motion for Leave to Amend (Doc. 9) wherein he included a paragraph about each Defendant's involvement. For the most part, the Motion contains information that is redundant to the Amended Complaint, or that is more generic than the allegations in the Amended Complaint. However, there is an exception as to Defendants N. Bebout and Aaseru. The Amended Complaint simply states that N. Bebout escorted Plaintiff to the healthcare unit, and Aaseru had him assigned to restricted housing, (Doc. 10 at ¶ 26) but the Motion goes further. In the Motion, Plaintiff adds the allegation that N. Bebout and Aaseru denied him a chance to decontaminate from the OC spray. (Doc. 9 at ¶¶ 11-12).. Plaintiff further adds in the Motion that Defendant Hazamier did not let him decontaminate from the OC spray, an allegation that was not present in the Amended Complaint. (Doc. 9 at ¶5). Finally, the Motion adds allegations against Defendant A. Kenner that were not presented in the Amended Complaint. Specifically, Plaintiff alleges Kenner denied him a copy of his medical records and/or indicated he would have to pay for records over 50 pages. (Doc. 9 at ¶10).

Based on the allegations in the Amended Complaint, read in conjunction with the additional allegations in the Motion to Amend (Doc. 9), the Court designates the following counts:

**Claim 1:** **Eighth Amendment failure to protect claim against Defendants Wooley and Hazamier for the April 11, 2023, assault;**

**Claim 2:** **Eighth Amendment deliberate indifference to medical needs claim against Nurse Nicole for only giving Plaintiff a band aid for his stab wounds on April 11, 2023;**

**Claim 3:** **Eighth Amendment deliberate indifference claim against Defendants Lt. Bennet, C/O Bennet, C/O Chandler, and C/O Garcia for refusing to get Plaintiff medical care or basic necessities in his segregation cell on April 11, 2023;**

**Claim 4:** **Eighth Amendment deliberate indifference claim against Defendants Travis Bayler, Allison Harais, and Sheilam Ramsey for failing to act on Plaintiff's grievance appeals.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court**.**  Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

PRELIMINARY DISMISSALS

In addition to the enumerated claims, Plaintiff also makes allegations about his transfer from Pontiac to Menard, and ongoing kidney problems.  Although Plaintiff's medical issues related to his kidney might be sufficient to state a claim, he has not

associated these specific problems with any named defendants, so he cannot proceed on these allegations as pled. These claims also appear almost entirely distinct from the majority of the allegations in this lawsuit. The kidney related claims concern an ongoing and possibly chronic medical situation, whereas the other claims relate to a one-time attack and physical injuries. Given the lack of overlap between the claims, it would likely be improper for Plaintiff to pursue the kidney-related claims in this lawsuit. The Federal Rules of Civil Procedure limit the number and types of claims that can be presented in a single lawsuit. *See* Fed. R. Civ. P. 18-21; *Dorsey v. Varga*, 55 F.4th 1094 (7th Cir. 2022) (discussing the rules of joining claims and parties in a single suit, as well as the court's authority to strike a misjoined complaint, to dismiss improperly joined defendants, or to sever a complaint into multiple cases). As such, if Plaintiff wishes to further pursue claims about his kidney care, he should present these concerns in a separate lawsuit.

The same goes for Plaintiff's allegations related to his need for a front cuff permit. This claim appears unrelated to the majority of this lawsuit, and it is not directed at a specific individual, so it is insufficient. This claim also likely belongs in a separate lawsuit because it has no apparent relationship to Claims 1-4 that were identified above.

Plaintiff also named A. Kenner as a Defendant, and he alleged this individual is responsible for maintaining medical records and for responding to inmate record requests. (Doc. 10 at 4). Defendant Kenner is not discussed in the factual allegations of the complaint, so it is not clear what he or she is alleged to have done that caused Plaintiff harm. Plaintiff adds in the motion for leave to amend (Doc. 9), that Kenner could be held liable because they denied him a copy of his medical records and/or they would have

charged him for records in excess of 50 pages. Neither of these allegations correlates with a constitutional right, so these additional facts do not help Plaintiff to make out a claim against Kenner. As such, Defendant Kenner is dismissed without prejudice for failure to state a claim.

Finally, Plaintiff alleges that Defendant Bebout handcuffed him and took him to the medical unit, and Defendant Aaseru directed that he be placed in protective custody. (Doc. 10 at 7). Neither of these acts gives rise to an obvious claim under § 1983, so Defendants Bebout and Aaseru will be dismissed without prejudice for failure to state a claim. Plaintiff adds in the Motion for Leave to Amend that Defendants Aaseru, Bebout, and Hazamier denied him a chance to decontaminate from the OC spray, but he does not explain when these defendants could have done this and failed to do so. He alleges Bebout walked him to the healthcare unit, but this suggests Bebout likely believed he was on the way to get care, so it is not clear he should have done more. As to Aaseru and Hazamier, Plaintiff does not describe any face-to-face interactions with these two on the day of the stabbing, so it is unclear when they declined him a chance to decontaminate, and any such claim against them thus fails.

## DISCUSSION

### Claim 1

To establish a failure to protect claim under the Eighth Amendment, a plaintiff must allege "(1) that he was incarcerated under conditions posing a substantial risk of serious harm and (2) that the defendants acted with deliberate indifference to his health or safety." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010). Under the Eighth

Amendment, correctional officials have a constitutional duty to protect inmates from violence. *Farmer v. Brennan*, 511 U.S. 825, 844 (1994). But "prisons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). A failure to protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). Instead, the plaintiff must establish that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago*, 599 F.3d at 756. "[N]egligence, or even gross negligence does not equate to deliberate indifference" and does not state a claim for a violation of the Eighth Amendment. *Johnson v. Dominguez*, 5 F.4th 818, 825 (7th Cir. 2021).

Plaintiff originally alleged that the Warden of Menard and the Director of IDOC should be held liable for failing to protect him, but the Court noted that this allegation was too generic and did not suggest personal knowledge of a risk or a chance to intervene by these defendants. (Doc. 8). Plaintiff now alleges that he informed two prison staff members about his gang-related concerns with the West cellhouse at some unspecified time prior to his move to that cellhouse and the attack. While these allegations at least suggest some degree of personal knowledge attributable to Defendants Wooley and Hazamier, the threat Plaintiff speaks of is still quite generic. He alleges only that he was worried about "gang association issues," but not that he had been the subject of specific threats. He also states that he was attacked upon moving to the cellhouse, but he does

not indicate that the attack was related to gang affiliations, or that he knew the attacker prior to the incident.

A plaintiff must establish that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010). As described in one case:

> To establish deliberate indifference on the part of the defendants sued individually, Klebanowski needed to show that the officers acted with the equivalent of criminal recklessness, in this context meaning they were actually aware of a substantial harm to Klebanowski's health or safety, yet failed to take appropriate steps to protect him from the specific danger. Klebanowski testified during his deposition that he told officers twice on September 8 that he was afraid for his life and he wanted to be transferred off the tier. Those statements, and the officers' knowledge of the first beating, are the only pieces of evidence in the record that can assist Klebanowski in his attempt to show that the officers were aware of any risk to him. We have previously held that statements like those made by Klebanowski are insufficient to alert officers to a specific threat. *Butera*, 285 F.3d at 606 (deeming insufficient to establish deliberate indifference statements by a prisoner that he was "having problems in the block" and "needed to be removed"). In *Butera*, we deemed the inmate's statements insufficient to give notice to the officers because they did not provide the identities of those who threatened the inmate, nor state what the threats were. *Id.*
>
> The facts of this case make clear our reason for requiring more than general allegations of fear or the need to be removed. By Klebanowski's own testimony, the officers knew only that he had been involved in an altercation with three other inmates, and that he wanted a transfer because he feared for his life. He did not tell them that he had actually been threatened with future violence, nor that the attack on September 8 was inflicted by gang members because of his non-gang status. Without these additional facts to rely on, there was nothing leading the officers to believe that Klebanowski himself was not speculating regarding the threat he faced out of fear based on the first attack he suffered. This lack of specificity falls below the required notice an officer must have for liability to attach for deliberate indifference.

*Klebanowski v. Sheahan*, 540 F.3d 633, 639-40 (7th Cir. 2008) (footnote omitted).

Plaintiff's situation is akin to *Klebanowski* in so much as his allegations suggest only a general fear of a risk of violence, rather than discrete threats that were obvious and could have been prevented. The Court finds that as plead, Plaintiff still has not plausibly alleged the elements of a failure to protect claim. He does not indicate when he spoke to Wooley or Hazamier—was it just a few days before his move and attack, or was it weeks or months? Plaintiff does not indicate how soon his attack occurred after he moved to the West cellhouse—was it hours, days, months? As such, the claim relies heavily on a general risk of fear and does not plausibly suggest that Defendants Wooley and Hazamier should be held personally responsible for the attack Plaintiff suffered.

**Claim 2**

An Eighth Amendment claim arising from the denial of medical care consists of an objective and a subjective component. *Berry v. Peterman*, 604 F.3d 435, 439–40 (7th Cir. 2010). A plaintiff must show that he suffered from a serious medical condition (i.e., an objective standard) and also show that each defendant responded with deliberate indifference (i.e., a subjective standard). *Id.*

The Court will assume for purposes of initial review that stab wounds are a sufficiently serious injury to warrant medical attention. Plaintiff alleges that Nurse Nicole only gave him a band aid and sent him to his cell. He claims that he was left to suffer in his cell, and that he felt he might have sustained a concussion due to dizziness. At this preliminary juncture, the Court will allow Plaintiff to proceed against Defendant Nicole for alleged deliberate indifference to his need for medical care.

**Claim 3**

Plaintiff alleges that when he was placed in a segregation cell, he did not have any bedding, clothing, or other cleaning supplies.  He had just been sprayed with OC spray and he neither had hygiene supplies nor an opportunity to wash the OC spray off of his body.  He alleges that as a result he was left to suffer from his stab wounds and with the chemical spray on his body and in his eyes.  Plaintiff alleges that on April 11, 2023, he told Defendants Lt. Bennet, C/O Bennet, C/O Chandler, and C/O Garcia about his need for medical care and to clean up, but they did not assist him.  He alleges he remained without the essential supplies for a whole 28-day stretch.  While it is unclear if during the 28-days he had further interactions with these four defendants, the Court finds at this preliminary juncture, Plaintiff may proceed against the four defendants for the lack of medical care and supplies, or the ability to wash-up from the OC spray.

**Claim 4**

In the last paragraph of factual allegations, Plaintiff claims that Defendants Bayler, Allison, and Ramsey were made aware of his problems via emergency grievances and grievance appeals, but they did not do anything to address Plaintiff's injuries or pain, nor did they secure essential supplies for him while in segregation. (Doc. 10 at 11).  Plaintiff described all three of these defendants as employees of the Administrative Review Board (ARB), which the Court knows to be the final stage of the grievance process for IDOC inmates.  (Doc. 10 at 4-5).  Plaintiff's allegations against these three defendants are insufficient to state a claim because the mere role of processing a grievance is not sufficient to maintain a claim.  An individual generally can only be held liable for their

role in the grievance process if they also participated in the underlying harm, or if they blatantly turned a blind eye to the situation. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) (the alleged mishandling of a grievance by an official who did not otherwise participate in the underlying conduct states no claim). On the facts alleged, Plaintiff cannot proceed against these three defendants who merely processed his grievances at the final level of appeal but did not otherwise participate in the underlying issues. As such, Claim 4 is dismissed for failure to state a claim against Defendants Bayler, Allison or Ramsey.

## DISPOSITION

**IT IS HEREBY ORDERED THAT Claim 2** of the Amended Complaint (Doc. 10) survives initial screening as described above against Defendant Nicole, and Claim 3 survives against Defendants Lt. Bennet, C/O Bennet, C/O Garcia, and C/O Chandler. By contrast, **Claims 1 and 4** are dismissed in full for failure to state a claim against Defendants Wooley, Hazamier, Travis Bayler, Harais Allison, and Ramsey Sheilam. For reasons explained above, Plaintiff has also failed to state a claim against Defendants N. Bebout, C. Aaseru, and A. Kenner. The Clerk of Court is **DIRECTED** to **TERMINATE** Defendants Sgt. Wooley, Maj. Hazamier, C. Aaseru, N. Bebout, A. Kenner, Travis Bayler, Harais Allison, and Ramsey Sheilam because Plaintiff has failed to state a sufficient claim against these parties.

The Clerk of Court is **DIRECTED** to prepare for Defendants Nicole, Lt. Bennet, C/O Bennet, C/O Garcia, and C/O Chandler: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).

The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint (Doc. 10), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA protective order, because this case will involve the exchange of medical records.

**IT IS SO ORDERED.**

**DATED: January 16, 2024**

/s/ Mark A. Beatty
MARK A. BEATTY
United States Magistrate Judge

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.